UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CARLOS CONNOLLY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 13-3361 |
| GEORGIA CLARK, *et al.* | ) ) ) |
| Defendants. | ) |

### SUMMARY JUDGMENT OPINION

Plaintiff, proceeding pro se and presently incarcerated at Danville Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need for events that allegedly occurred during his incarceration at Logan Correctional Center. The matter comes before this Court for ruling on the Supplemental Motions for Summary Judgment filed by Plaintiff and Defendants Clark and Lercher (Docs. 58, 59, 69), and the Motion for Extension of Time and Motion to Drop Party filed by Defendant Carter. (Doc. 62).

## PRELIMINARY MATTERS

### Defendant Carter's Motions

Defendant Carter's Motion for Extension of Time (Doc. 56) is retroactively granted. Plaintiff did not oppose the motion, and Defendant Carter filed the relevant document within the time frame requested.

Defendant Carter filed a motion seeking the Court to drop him as a party pursuant to Rule 21 of the Federal Rules of Civil Procedure. (Doc. 62). Defendant Carter was added as a defendant in this lawsuit because, at the time, he was the treating optometrist at Plaintiff's place of incarceration and the individual who could ensure that any injunctive relief was carried out. See Text Order entered March 14, 2014 (granting Plaintiff's motion to add Dr. Carter); Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (describing proper defendants where injunctive relief is sought).

Defendant Carter is no longer Plaintiff's treating optometrist. In addition, Plaintiff alleges in a subsequent motion that he has since received the eyeglasses he sought through injunctive relief. (Doc. 69 at 2). Accordingly, because any claim for injunctive relief is now moot, Defendant Carter's motion is granted.

**Defendants' Motions to Strike**

On March 21, 2016, Plaintiff filed a Renewed Motion for Summary Judgment. (Doc. 69). Defendants Clark and Lercher filed respective motions to strike Plaintiff's motion as untimely. (Docs. 70, 71). By any interpretation, Plaintiff's motion was filed well after any dispositive motion deadline previously set in this case. However, Plaintiff includes relevant information in his motion that did not exist prior to the Court's deadlines. Defendants' respective motions to strike are denied. Plaintiff's motion is discussed below.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be

more than "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## FACTS

At all relevant times, Plaintiff was incarcerated at Logan Correctional Center ("Logan").  Defendant Clark was a nurse at the facility, and Defendant Lercher was the healthcare administrator.  Prior to arriving at the facility, Plaintiff had been prescribed photochromic (transitions) lenses to treat his sensitivity to extremely bright lights.

On October 26, 2011, Defendant Clark confiscated Plaintiff's wire-framed eyeglasses with photochromic lenses as they violated prison security rules.  Prior to taking the eyeglasses, Defendant Clark confirmed that Plaintiff had another pair.  Plaintiff later requested and received an appointment with Dr. Davis, an optometrist.  Dr. Davis approved photochromic lenses in a plastic frame on November 17, 2011.  The decision to provide these lenses

was referred to "collegial" review by another physician on December 23, 2011.  On February 9, 2012, Dr. Davis opted to provide Plaintiff with a "sun shield," a thin piece of tinted plastic that fits inside Plaintiff's glasses, and indicated that the photochromic lenses were no longer required.  Defendant Clark issued Plaintiff the sun shield on February 19, 2012.

R. Beard was a registered nurse at Logan Correctional Center whose signature appears in the medical progress notes dated November 17, 2011, December 23, 2011, and February 9, 2012.  In its Opinion entered September 16, 2015, the Court sought clarification of R. Beard's identity because it appeared that R. Beard, not Dr. Davis, ordered photochromic lens for Plaintiff and later opted for the sun shield eventually issued.  As explained by the Defendants, when a physician writes an order in the medical records, the nurse executing the order will sign his or her name under the physician's signature to indicate that the order has been carried out.  Defendants identify the signature above R. Beard's name as belonging to Dr. Davis.  Plaintiff does not dispute this.

Defendant Lercher's name appears in the medical progress notes on November 17, 2011 and February 9, 2012.  Defendant

Lercher asserts that her name was written in the notes by Dr. Davis, but does not know why her name was included. Plaintiff submitted a request regarding his eyeglasses to Defendant Lercher on November 27, 2011. (Doc. 37 at 11). Plaintiff's request was forwarded to the eye clinic nurse for review.

The effectiveness of the sun shield as a substitute for photochromic lens is unknown because Plaintiff refused to wear it. Pl.'s Dep. 44:8-15. In February 2016, another optometrist at a different facility issued Plaintiff a pair of eyeglasses with photochromic lenses.

## ANALYSIS

Inmates are entitled to adequate medical care under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. Id. at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. McDonald v. Hardy, 821 F.3d 882, 888 (7th Cir. 2016) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014), and Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)). Rather, liability attaches when "the

official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Defendants argue first that Plaintiff did not suffer from an objectively serious medical need.  "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotations omitted).  Plaintiff's testimony regarding his sensitivity to light and the fact that Plaintiff was previously prescribed photochromic lenses is sufficient for a reasonable juror to conclude that Plaintiff suffered from a serious medical need.

Defendant Lercher, as the healthcare administrator, was not authorized to diagnose and treat patients, nor was she a physician. Her role was administrative, and, therefore, she was entitled to defer to the judgment of the medical staff with regard to Plaintiff's treatment.  See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010)

(nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored).

Plaintiff alleges that he told Defendant Lercher about Dr. Davis' orders for plastic-framed eyeglasses, but Plaintiff does not provide the dates of these conversations. Plaintiff made a request to Defendant Lercher shortly after the plastic frames were prescribed and that request was promptly forwarded to the eye clinic where Plaintiff was receiving treatment. The medical records contain no specific order that Defendant Lercher return Plaintiff's wire-rimmed eyeglasses or any indication that Defendant Lercher even had the authority to do so. Therefore, the Court finds that no reasonable juror could conclude that Defendant Lercher was deliberately indifferent.

Defendant Clark was the prison official who originally confiscated Plaintiff's wire-rimmed glasses. Plaintiff does not dispute that the wire-rimmed glasses were considered contraband. Pl.'s Dep. 49:4-6 ("I think in general now it's becoming a thing where [wire-rimmed eyeglasses are] considered probably contraband in most facilities.").

At the time these eyeglasses were taken, the record does not suggest that Defendant Clark was aware that Plaintiff faced a substantial risk of harm if he did not have eyeglasses with photochromic lenses, nor did Defendant Clark take the eyeglasses without first confirming that Plaintiff had another pair.  Once Dr. Davis prescribed different eyewear, Defendant Clark was required to follow Dr. Davis' orders and, therefore, could not have returned Plaintiff's wire-rimmed frames.  Berry, 604 F.3d at 443 (Nurses must "defer to treating physicians' instructions and orders in most situations . . . [unless] it is apparent that the physician's order will likely harm the patient.").

In addition, R. Beard was the nurse who indicated that Dr. Davis' orders had been followed on November 17, 2011, December 23, 2011, and February 9, 2012.  Any failure to follow through on Dr. Davis' orders for plastic-framed eyeglasses with photochromic lens, therefore, cannot be attributed to Defendant Clark.  Defendant Clark provided the sun shield to Plaintiff on February 19, 2012, per Dr. Davis' orders, but no plausible inference exists that she was responsible for Plaintiff's subsequent refusal to wear them.

Accordingly, the Court finds that no reasonable juror could conclude that Defendant Clark was deliberately indifferent.

### Plaintiff's Motion for Summary Judgment

Plaintiff alleges in his Renewed Motion for Summary Judgment (Doc. 69) that an optometrist at Danville has recently provided him with eyeglasses with photochromic lenses. This event, however, does not have any relevance to the issues presented as they relate to Defendant Clark and Defendant Lercher.

Dr. Davis prescribed the sun shield to Plaintiff in lieu of photochromic lenses. Defendants were then required to follow those orders, though the medical progress notes show that R. Beard indicated the orders were followed. Construed in the light most favorable to the Defendants, no reasonable juror could conclude that Plaintiff is entitled to summary judgment. Therefore, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED:**

1) **Defendant Carter's Motion for Extension of Time [56] and Defendant Carter's Motion to Drop Party [61] are GRANTED. Defendant Carter is dismissed from this lawsuit. Clerk is directed to terminate Defendant Carter.**

2) **Defendants' respective Motions to Strike [70][71] are DENIED.**

**3) Plaintiff's Renewed Motion for Summary Judgment [69] is DENIED.**

**4) Defendants' Motions for Summary Judgment [57][59] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed in this Order are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

**5) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:     August 11, 2016.

FOR THE COURT:

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE